## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-4015 |
| | ) | |
| HENRY COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### ORDER

Now before the Court is Defendant Henry County's Motion for Summary Judgment. For the reasons set forth below, the motion [#21] is GRANTED IN PART and DENIED IN PART

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the claim asserted in the Complaint presents a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq*.

### BACKGROUND

Plaintiff United States of America ("Plaintiff") brings this action against Defendant Henry County alleging that it violated Title VII by discriminating against its former employee, Michele Baze, based on her sex when her supervisor, Jack Anderson, sexually harassed her. Specifically, Plaintiff alleges that Henry County was on notice that Anderson sexually harassed employees because of similar allegations made by former employee, Jennifer Richardson, but failed to take meaningful steps to remedy his behavior and prevent further harassment.

**Anderson's Alleged Harassment of Jennifer Richardson**

Jennifer Richardson began working for Henry County on October 2, 2001, as animal control secretary. She reported directly to Jack Anderson, the animal control warden. Richardson and Anderson generally worked alone together in a small office separate from the other Henry County buildings. Richardson worked with Anderson from October 2001 until early summer 2003 with no complaints.

Beginning in the summer of 2003, Richardon testified that her work environment became hostile because Anderson began making advances toward her. Specifically, Anderson brushed Richardson's hair a few times, taped her legs together with scotch tape two or three times, and repeatedly looked her body up and down.

On August 11, 2003, Richardson reported Anderson's behavior to Lieutenant Jim Padilla, a Henry County police officer, ("Lt. Padilla") because it was making her uncomfortable. She also told Lt. Padilla that while she and Anderson were on a field call, Anderson grabbed her by the arms, pulled her next to a truck, and had his arms around her before letting her go. Lt. Padilla asked Richardson if Anderson had ever attempted to kiss her or touch her anywhere besides her arms, and she said no. However, she did note that Anderson had slapped her on the buttocks once, but he never did it again after Richardson asked him to quit. In addition, Richardson told Lt. Padilla that Anderson once "snarled" in her ear but did not physically touch it. Finally, Richardson stated that Anderson asked her out for a beer once while they were at a mutual friend's wedding.

During this conversation, Richardson told Lt. Padilla that she loved her job and that she did not want to get Anderson in trouble; she only wanted Anderson to be aware that he was making her uncomfortable because of these incidents. Later that day, Lt. Padilla told Richardson

that he would speak with Anderson to discuss her concerns. Again, Richardson told Lt. Padilla that she liked working with Anderson and that she wanted to keep working. Lt. Padilla advised Richardson that he would talk to Anderson the following Monday morning when Anderson returned from vacation. In addition, Lt. Padilla asked Richardson if she was comfortable with how he was addressing her concerns, and she said yes.

Sometime during the week before Lt. Padilla talked to Anderson, Richardson notified Barb Link, the County Clerk, that Anderson had made some passes at her, but she did not go into any details. Link told Richardson to meet with State's Attorney, Terry Patton, and then she warned Richard Erickson, the Equal Employment Officer, that Richardson might come to him about a complaint. Richardson met with Patton, and she told him that Lt. Padilla was going to talk to Anderson. As a result, Patton told her that Lt. Padilla would handle the complaint.

On August 18, 2003, Lt. Padilla called Richardson immediately after he talked with Anderson. After that discussion, Richardson believed that Lt. Padilla adequately addressed her concerns. Richardson did not have any problems with Anderson for approximately nine months until May 2004, when he began the same behavior as Richardson had originally reported to Lt. Padilla. Richardson did not tell anyone that Anderson's behavior started again. Subsequently, Richardson resigned in August 2004 without giving Anderson a reason. She told people at Henry County that she resigned for personal reasons and family obligations, although it is not clear whom she told.

### Anderson's Alleged Harassment of Michele Baze

Michele Baze began working for Henry County on August 23, 2004, as the animal control secretary. As Richardson previously did, Baze reported to Jack Anderson, the animal control warden. Baze and Anderson worked alone together every day in a small office in a

3

remote area. Baze generally performed office work; however, occasionally she would help Anderson with animal complaints in the field. Baze worked at Henry County from August 2004 until April 2006 with no complaints.

Beginning in April 2006, Baze began feeling uncomfortable while working with Anderson. Baze recorded these incidents in a journal, which she later provided to Henry County after she filed her Complaint. The first incident occurred in April 2006 when Anderson tickled Baze's sides with his fingers. Baze further noted that Anderson bumped into her side, and she could feel Anderson's erect penis. In June 2006, Anderson commented about Baze's breast size and her physical appearance. During her deposition, Baze testified that she did not feel her work environment was hostile at that point in June 2006. Baze then went on maternity leave.

Upon returning from maternity leave on September 18, 2006, Baze alleges that Anderson's harassment significantly escalated. During that week, Anderson hugged Baze more frequently. He would wrap his arms around her while stating that he missed her while she was on maternity leave. Anderson even smelled her hair, snarled in her ear, and tried to kiss her neck. In addition, Anderson cornered Baze in the office to hug her where he again smelled her hair, snarled in her ear, and tried to kiss her neck. Anderson also pulled Baze onto his lap and slapped her butt when she stood up. Baze alleges that Anderson's harassment continued nearly every day for approximately one month.

On October 18, 2006, Baze contacted her union representative regarding Anderson's sexual harassment. The union representative completed an official grievance form, which he sent to Henry County's Equal Employment Opportunity ("EEO") Officer, Dick Erickson. Later that day, Baze and her union representative met with Erickson, and she explained Anderson's harassment in detail to Erickson. Erickson informed Baze that the County would conduct an

investigation, and that she should take two paid days off. In addition, Erickson informed Baze that when she returned, she would be moved to the county clerk's office in order to avoid contact with Anderson.

Erickson immediately called the county board chairman who organized an investigative panel to assess the credibility of Baze's allegations. On October 23-24, 2006, the investigative panel interviewed Baze, Anderson, Baze's husband, and Jennifer Richardson (the former animal control secretary). On December 11, 2006, after concluding its investigation, Henry County terminated Anderson because it determined that Baze's allegations were sufficiently credible. Erickson testified that the investigation took six weeks because they were waiting for the interview transcripts.

After Anderson's termination, Baze moved back to the animal control office, where she performed Anderson's duties until the County hired a new animal control warden in February 2007. Baze testified that the new animal control warden did not harass her. However, Baze resigned in July 2007 stating that the new animal control warden did not really do his job, and deputies in the Sheriff's Office were not treating her well. Baze Dep. at 55.

Upon hire, Baze received a copy of Henry County's Schedule of Personnel Policies, and she signed a form acknowledging that she received these policies. In addition, the Personnel Policies are on file with the county clerk. The Personnel Policies provide:

> Any type of harassment, including sexual harassment, of a Henry County employee by another employee will not be tolerated . . . It refers to behavior which is not welcome, which is personally offensive, and which, therefore, interferes with work effectiveness. . . . This includes repeated offenses of sexual flirtations, advances or propositions, continued or repeated verbal abuse of a sexual nature . . .

> Violations of this policy will result in disciplinary action or possible termination. Employees should report any violations of policy or complaints under this policy to the EEO Officer.
>
> In so far as possible, complaints and/or grievances should be resolved between the employee and the Elected Official or Department Head. If the matter is not resolved to the satisfaction of the employee, the complaint or grievance should be written to the Elected Official or Department Head with a copy to the County EEO Officer. The EEO Officer will follow the County guidelines and involve the County Officers Committee where necessary.

Defendant's Ex. E "Henry County Schedule of Personnel Practices" at 4.

The night before Baze reported her grievance to her union representative, Baze called Jennifer Richardson to ask her why she had quit. Richardson informed Baze that she had quit because Anderson harassed her.

On March 5, 2009, Plaintiff filed a Complaint against Henry County alleging it discriminated against its former employee, Michele Baze, on the basis of her sex. Henry County now moves for summary judgment. The matter is fully briefed and this Order follows.

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.3d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Crop.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. The Court must then determine whether a trial is necessary – whether, in other words, there are any genuine factual issues that must be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

To prevail on a hostile work environment sexual harassment claim based on sex under Title VII, a plaintiff must establish: (1) the alleged victim was subjected to unwelcome harassment; (2) the harassment was because of her sex; (3) the harassment was severe or pervasive enough to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). In its motion for summary judgment, Henry County first argues that it is entitled to judgment as a matter of law because the harassment of Baze was not "severe or pervasive" enough to create a hostile work environment. Alternatively, Henry County argues that Plaintiff cannot establish element four as a matter of law because it can prove the *Ellerth/Faragher* affirmative defense.

## I. Hostile Work Environment

In determining whether a work environment is hostile or abusive, courts examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Courts also assess the plaintiff's work environment both objectively and subjectively. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). In other words, a reasonable person would have to find the work environment hostile, and the plaintiff actually perceived it as such. *Id.*

However, it is "challenging to precisely define what constitutes a hostile working environment." *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001). No single fact description can fully draw the line in determining a hostile work environment from a merely offensive one. *Id.* Further, harassment "need not be severe *and* pervasive to impose liability; one or the other will do." *Hostetler,* 218 F.3d at 808 (*citing Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999). "There are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor. Cumulatively . . . such acts might become sufficiently pervasive to support a hostile work environment claim." *Id.*

Here, a genuine issue of material fact exists as to whether Baze's work environment was "severe or pervasive" enough to be a hostile work environment. Henry County contends that two Seventh Circuit cases support summary judgment in its favor: *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (affirming summary judgment for the employer where a supervisor asked the plaintiff on dates, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs in her work area, and attempted to kiss her in a bar); and

8

*Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (affirming summary judgment where employees made several sexual comments about the plaintiff, teased her, stared at her breasts, and touched her arm, fingers, and buttocks in four isolated incidents).

However, neither *Weiss* nor *Adusumilli* are persuasive here because they do not involve the same persistent, physical contact as alleged by the Plaintiff. Notably, the Seventh Circuit identified *Weiss* and *Adusumilli* as the "outer boundaries of conduct that can be labeled non-severe at the summary judgment stage." *Hostetler*, 218 F.3d at 808. Thus, a court should not grant summary judgment on a case that involves even slightly more harassment. Here, once Baze returned from maternity leave, Anderson allegedly began hugging her and cornering her against her desk on a daily basis for nearly a month. In addition, Anderson smelled her hair and kissed her neck frequently during these incidents. Plaintiff contends that Anderson's harassment of Baze occurred on a daily basis whereas the harassment in *Weiss* and *Adusimilli* were isolated incidents. Pl.'s Reply at 49. The pervasive harassment of Baze coupled with the more severe isolated incidents when Anderson slapped Baze's buttocks and pressed his erect penis against her sufficiently support a hostile work environment claim.

Moreover, Anderson's conduct is more analogous to *Kampmier*. 472 F.3d at 934 (finding a genuine issue of material fact where a supervisor made suggestive comments, hugged her fifty to sixty times, grabbed her arms, jumped on her lap ten times, grabbed her buttocks thirty times, kissed her on the cheek, and rubbed up against her). In fact, the *type* of behavior in both *Kampmier* and this case is essentially identical. For example, both cases involve a significant amount of unwelcomed hugging, grabbing, and pulling. In addition, both supervisors kissed the plaintiff's face or neck, rubbed their bodies up against the plaintiff, and touched the employee's buttocks.

9

Henry County erroneously distinguishes *Kampmier* by arguing that "there is no evidence that Anderson physically contacted Baze anywhere near the frequency of the contact in *Kampmier*." To support this argument, Henry County cites to the *total* number of incidents that occurred in *Kampmier* (see above paragraph). However, the harassment in *Kampmier* occurred over a six month period. *Id.* at 934. In contrast, here, Baze reported Anderson's harassment within one month after it escalated. Henry County's argument would suggest that Baze should have waited to report Anderson's behavior to increase the *total* number of physical contacts. However, Henry County's argument contradicts the purpose of Title VII to report harassment immediately. Accordingly, courts consider the frequency of discriminatory incidents rather than the total. *See Harris*, 510 U.S. at 23; *Hostetler*, 218 F.3d at 808. As such, the evidence supports the Plaintiff because Anderson physically contacted Baze with the same (or even greater) frequency as *Kampmier*. Thus, a genuine issue of material fact exists as to whether the frequency of Anderson's harassment was so severe and pervasive to constitute a hostile work environment.

## II. Henry County's *Ellerth/Faragher* Affirmative Defense

Finally, the plaintiff must establish that there is a basis for employer liability. Under Title VII, different standards apply depending on whether the alleged harasser is the victim's supervisor or co-worker. *Burling Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). An employer is strictly liable for a supervisor's sexual harassment of a subordinate. *Id.* However, when no tangible employment action is taken, a defendant employer may avoid liability by proving an affirmative defense. *Id.* The *Ellerth/Faragher* affirmative defense requires a defendant employer to establish that it (1) exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage

10

of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *Id.*; *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Here, Plaintiff concedes that Henry County did not take any tangible employment action. Thus, in moving for summary judgment, Henry County first argues that it took reasonable steps to prevent sexual harassment because it promulgated an appropriate anti-harassment policy. Further, Henry County argues that it took reasonable steps to correct the harassment because it initially resolved Richardson's complaint, and it terminated Anderson after Baze's complaint. On the second element, Henry County argues that Richardson and Baze unreasonably failed to take advantage of its anti-harassment policies.

### A. Reasonable care to prevent and correct sexually harassing behavior

As a matter of law, Henry County exercised reasonable care to prevent sexual harassment because it promulgated an appropriate anti-harassment policy with effective grievance mechanisms.  "Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms." *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 811 (7th Cir. 1999) (*citing Ellerth*, 524 U.S. at 763).  "While not required as a matter of law, the existence of an appropriate anti-harassment policy will often satisfy this first prong." *Id.*  However, "the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment" because it must also provide "effective grievance mechanisms." *Gentry v. Export Packaging Co.*, 238 F.3d 842, 847 (7th Cir. 2001).  The law does not require success; it only requires that the employer acted reasonably. *Shaw*, 180 F.3d at 811.

Here, it is undisputed that the policy identified prohibited sexually harassing behavior. However, Plaintiff argues that Henry County did not exercise reasonable care to prevent sexual

11

harassment because it did not disseminate the Policy, and the Policy was defective on its face because it was ambiguous.

First, no material issue of fact exists as to whether Henry County disseminated its policy upon Baze's employment because Baze signed a form acknowledging that she received the Schedule of Personnel Policies. As such, Henry County undisputedly distributed its policies when it hired Baze. *See Shaw*, 180 F.3d at 811 (noting that employees who sign a form acknowledging that they have received personnel policies have a duty to read the policies and are therefore bound by their terms).

However, at the time of Richardson's hire, Henry County did not require newly hired employees to sign an acknowledgment form. Three Henry County officials testified that all of its employees received the policies even prior to the implementation of the acknowledgment form. While Richardson does not dispute that she received the Schedule, she testified that she does not recall. In addition, Anderson testified that he had read a copy of the Schedule upon hire, but that he was unfamiliar with its contents. Even assuming Henry County did not physically disseminate the Schedule, Richardson and Anderson had constructive knowledge of the policies because they were filed with the County Clerk's office where all of the County's public documents are filed. *See Hill v. American Gen. Fin., Inc.*, 218 F.3d 639 (7th Cir. 2000) (holding that an employee has knowledge of the anti-harassment policy even when the employee did not recall receiving anti-harassment policies because they were stored in a "public access type place where the employees could look at them").

Henry County erroneously contends that distributing its policies to department heads and being available to answer questions about the policy constituted EEO training. Plaintiff responds by providing a significant amount of evidence that Henry County never educated its employees

12

on the Policy beyond disseminating it.  Plaintiff supports this contention by stating that Baze and Richardson were not aware of it.  While Plaintiff is correct that a reasonable jury could easily conclude that Henry County did not educate its employees, it does not preclude Henry County from meeting its burden of proof that it exercised reasonable care to prevent sexual harassment.  In fact, the Seventh Circuit has repeatedly affirmed summary judgment for employers even when their employees were not aware of the employer's sexual harassment policies.  *Shaw*, 180 F.3d at 811-12; (summary judgment affirmed where the "[employee] testified in her deposition that she had never seen [the employer's] sexual harassment policy"); *Hill*, 218 F.3d at 644 (summary judgment affirmed where the "[employee] claimed that she did not recall having received copies of the policies").  Notably, Plaintiff does not cite to any Seventh Circuit precedent requiring an employer to train its employees on its harassment policies to satisfy the first element of *Ellerth/Faragher*.  Therefore, Henry County, as a matter of law, exercised reasonable care to disseminate its harassment policies.

In addition, Plaintiff contends that Henry County's anti-harassment policy was defective on its face because it did not identify the EEO officer by name.  In *Gentry v. Export Packaging Company*, the Seventh Circuit noted that failing to identify an individual specified in the policy may indicate that the employer's policy was unreasonable.  238 F.3d at 847.  There, the policy identified that the employees should direct complaints to the human resource representative.  *Id.* However, the employer had five employees in the human resource department.  *Id.*  The court emphasized that "no consensus existed within the management of the company regarding who assumed the position of Human Resources Representative."  *Id.* at 848.  Even so, the court did not hold, as the Plaintiff contends, that the individual must be identified by name.

13

As in *Gentry*, Henry County's Policy did not identify the EEO Officer, Erickson, by name. However, unlike *Gentry*, it is undisputed that Erickson was the EEO Officer at all relevant times during Richardson's employment. Significantly, a sign outside of Erickson's office in the courthouse identified him as such, and all employees must visit Erickson's office at least once upon hire.

Furthermore, an employer's response to alleged instances of employee harassment "must be reasonably calculated to *prevent further harassment* under the particular facts and circumstances of the case at the time the allegations are made." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir. 2002) (emphasis supplied). "Put differently, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Id.* at 955. (citing *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021 (7th Cir. 2004). The Seventh Circuit recognizes prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action. *Id.* "In assessing the corrective action, the focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Porter v. Erie Foods International, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009).

Further, Henry County exercised reasonable care as a matter of law to promptly correct sexual harassment because it initially resolved Richardson's complaint satisfactorily and terminated Anderson after Baze's complaint. This case is analogous to *Longstreet v. Illinois Department of Corrections.* 276 F.3d 379 (7th Cir. 2002). There, the employee alleged that her co-workers harassed her, and she based her claim upon their alleged harassment of previous employees. *Id.* at 381. Thus, she argued that her employer was negligent because it did not "prevent the harassment in the first place." *Id.* Similarly, here, Plaintiff argues that Henry

County did not act reasonably by preventing the harassment in the first place.  While *Longstreet* is distinguishable because it involves a co-worker rather than a supervisor (*Ellerth/Faragher* only applies to supervisor situations), it is still useful in determining whether Henry County acted reasonably to promptly correct sexual harassment.

In *Longstreet*, the Seventh Circuit dismissed the plaintiff's argument and upheld summary judgment because the employer took adequate steps to remedy the first complaint of harassment.  *Id.*  There, the employer warned and separated the harassing employee.  *Id.*  The employer "thought this resolved the situation" because the employee was satisfied with the resolution of the incident.  *Id.* at 383.  The Seventh Circuit affirmed summary judgment noting that the case involved one prior incident, "which was not ignored by the employer, followed by a second incident which resulted in the . . . discharge of the harasser."  *Id.*  It further noted that holding the employer liable in the second incident would impose "strict liability on an employer any time an employee commits two acts of harassment."  *Id.*  As a result, an employer would *always* have to terminate an employee accused of harassment to avoid future liability.  *Id.* (emphasis added).  Because the employer acted reasonably, supported by the fact that the harassed employee was satisfied with the resolution, the Seventh Circuit held that the employer's response was "reasonably calculated to prevent future harm."  *Id.*

*Longstreet* controls here because Henry County took similar steps to promptly correct separate incidents of sexual harassment by the same supervisor.  Regarding Baze's complaint, Plaintiff concedes that Henry County acted reasonably to correct sexual harassment by immediately investigating Baze's complaint and terminating Anderson.  Thus, the Court must determine whether Henry County's response to Richardson's complaint was reasonably calculated to prevent future harm as a matter of law.

15

Here, no reasonable jury could conclude that Henry County's response to Richardson's complaint was not reasonable because it is undisputed that the harassment stopped for nine months, and Richardson was satisfied with the resolution of the case. Henry County warned Anderson in the same way that the employer did in *Longstreet* where the Seventh Circuit deemed the response reasonable as a matter of law. More importantly, the harassment initially stopped in both cases. Furthermore, the fact that Anderson began harassing again is not dispositive. *See Longstreet*, 276 F.3d at 383 (noting employer's response was reasonable because it resolved the employee's complaint even though "it did not cure him of disgusting and boorish behavior").

Plaintiff contends that Lt. Padilla downplayed the gravity of Richardson's complaint and her desire for the County to be involved; the undisputed facts do not support this argument. Not only was the harassment not egregious at that point, but Richardson told Lt. Padilla that she loved working with Anderson. She further informed Lt. Padilla that she only wanted him to know that he was making her uncomfortable on occasion. Most importantly, Richardson testified that she told Lt. Padilla that she did not want Anderson to get into trouble as a result of her complaint. All of these statements are consistent with Lt. Padilla's testimony and his own testimony. Plaintiff does not dispute these statements. Based on the "particular facts and circumstances of the case," no reasonable jury could conclude that Richardson sought further County involvement based on these statements. *See Jackson v. County of Racine*, 474 F.3d 493 (7th Cir. 2007) (holding no trier of fact could deem employer's response to harassment was unreasonable noting that the employer could not be faulted for "attempting to work with complainants who did not wish to lodge formal complaints").

In addition, no reasonable jury could conclude that Lt. Padilla "downplayed the gravity" of the complaint based on Richardson's undisputed testimony. Lt. Padilla asked Richardson

16

probing questions about any additional harassment, which Richardson denied. Further, he asked Richardson whether he was addressing her concerns satisfactorily and told her to notify him if she had any additional problems. Richardson responded that she was satisfied with their conversation. Based on Richardson's testimony, along with Richardson's statement that she did not want Anderson to get into trouble, Plaintiff does not present a triable issue that Henry County's response was unreasonable.

Moreover, Lt. Padilla's response to Richardson's complaint to warn Anderson was reasonable as a matter of law. In *Longstreet*, the Seventh Circuit affirmed summary judgment holding that the employer acted reasonably because the employer: (1) believed it resolved the situation; and (2) the employee was satisfied with the result. 276 F.3d at 383. As in *Longstreet*, Lt. Padilla believed he had resolved the situation by warning Anderson that he was making Richardson uncomfortable. Furthermore, Richardson told Lt. Padilla that she was satisfied with this resolution, and she later testified that she was indeed satisfied. Based on these undisputed facts, Lt. Padilla's response to Richardson's complaint was reasonable as a matter of law.

According to Anderson's deposition, Lt. Padilla warned him that he was making Richardson feel uncomfortable – exactly what Richardson requested he say. Even though Plaintiff correctly notes that Anderson stated that he was "pretty much [his] usual self" after the conversation; Plaintiff fails to note that he went on to say that he did not "want to make people uncomfortable." Again, based on the nature of Richardson's complaint, no jury could reasonably conclude that Henry County did not exercise reasonable care responding to Anderson's harassing behavior.

Plaintiff further argues that Henry County did not act reasonably to correct Anderson's sexual harassment because Richardson notified other people within the County. Richardson

17

testified that she notified Link, the County Clerk, that Anderson "made some passes at her," but she did not go into details. Link advised Richardson to see Patton, the State's Attorney, and then warned Erickson, the EEO officer, that Richardson may be coming to speak with him. When Richardson met with State's Attorney Patton, Richardson advised him that Lt. Padilla was resolving her complaint. Richardson did not indicate that she wished to do anything more.

Further, simply because Erickson did not follow up with Richardson does not mean Henry County's response was unreasonable. Henry County had several different grievance mechanisms in place for employees to utilize, one of which was did not involve the EEO Officer. Richardson's discussion with Lt. Padilla firmly indicates that she desired to resolve this complaint informally. Her undisputed testimony, consistent with Lt. Padilla's incident reports, states that she did not want Anderson to get into trouble. Even if Richardson's intentions were completely different from her statements, "measures taken by employers will often 'not meet the plaintiff's expectations.' Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Lapka v. Chertoff*, 517 F.3d 974, 985 (7th Cir. 2008) (citing *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 536 (7th Cir. 1993)). Thus, no reasonable jury could conclude from these statements that she wanted a formal investigation conducted by Erickson.

### B. Employees' Response to Henry County's Sexual Harassment Procedures

Finally, there is a dispute of material fact as to whether Baze unreasonably failed to take advantage of Henry County's procedures to avoid further harm. A harassed individual has a duty to reasonably "avail herself of the employer's preventive or remedial apparatus." *Faragher*, 524 U.S. at 807. "If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care." *Id.* Furthermore, "an employee's subjective fears of

18

confrontation, unpleasantness or retaliation do not alleviate the employee's duty . . . to alert the employer to the allegedly hostile environment." *Shaw*, 180 F.3d at 813.

Here, Henry County first argues that Richardson failed to take advantage of Henry County's procedures when she resigned without providing Henry County the opportunity to correct Anderson's harassment. In addition, Henry County argues that Baze unreasonably failed to report Anderson's behavior to Henry County because she waited six months.

On Henry County's first argument, no material issue of fact exists as to whether Richardson unreasonably failed to take advantage of Henry County's preventative measures. Even if Richardson feared "confrontation, unpleasantness or retaliation" in reporting Anderson's harassment the second time, she still had the duty to report the allegedly hostile environment.

On Henry County's second argument, a genuine issue of material fact exists as to whether Baze unreasonably failed to take advantage of Henry County's harassment policies. One sign of unreasonable behavior by the Plaintiff is undue delay in reporting the problem to the employer's attention. *Jackson v. County of Racine*, 474 F.3d 493, 501 (7th Cir. 2007). Henry County argues that Baze delayed reporting the harassment for six months, which the Seventh Circuit has held to be unreasonable. *See Roby v. CWI, Inc.*, 579 F.3d 779 (7th Cir. 2009) (five months).

However, a genuine issue of material fact exists as to when Baze's work environment became hostile resulting in her duty to report Anderson's conduct. Prior to Baze's maternity leave, there were only three incidents over a three month period. A reasonable jury could conclude that such isolated incidents did not cause Baze to feel hostility at that time. *See Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 857 (7th Cir. 1999) ("Sexual harassment often consists of a series of harassing acts, often minor in themselves, and it may not be apparent to the victim that

they add up to harassment until some time after the first act"). After Baze returned from maternity leave, the frequency of the harassment began occurring much more frequently. Baze testified that she felt her work environment was hostile at this point. Approximately one month after returning from maternity leave, Baze reported the harassment to Henry County. A reasonable jury could conclude that Baze did not unreasonably delay reporting her harassment to Henry County.

## **CONCLUSION**

For the reasons set forth above, no material questions of fact exist as to whether Henry County exercised reasonable care to prevent and promptly correct any sexually harassing behavior experienced by Richardson and Baze. However, a genuine issue of material fact does exist as to whether Anderson's harassment of Baze was so severe or pervasive as to constitute a hostile work environment. Further, a genuine issue of material fact exists as to whether Baze unreasonably failed in a timely manner to take advantage of Henry County's harassment policies. Therefore, Defendant Henry County's Motion for Summary Judgment [#21] is GRANTED IN PART and DENIED IN PART.

ENTERED this 12th day of August, 2010.

        s/Michael M. Mihm  
        Michael M. Mihm  
        United States District Judge